Good morning. May it please the Court. My name is Megan Hoffman. I represent Sgt. Jatonya Muldrow in her appeal of the District Court's decision to grant the City of St. Louis and Capt. Deba's motions for summary judgment. Sgt. Muldrow is alleging that the City of in violation of Title VII and the Missouri Human Rights Act, and also that she was retaliated against by the same in violation of the Missouri Human Rights Act and Title VII's anti-retaliation provisions. Sgt. Muldrow has been employed with the City of St. Louis as a police officer for over two decades. From 2008 until approximately June 12th of 2017, she was employed in the a myriad of matters, including public corruption, which involved highly confidential investigations. She did a gun crimes unit. She was the head of that. And she also was head of the unit's gang unit. During the time in intelligence, Sgt. Muldrow was also deputized as a task force officer for the FBI. As part of her job duties with the FBI, she was eligible for up to $17,500 in overtime pay annually. Sgt. Muldrow was a very highly respected sergeant in the intelligence unit. She was described by her superiors as a workhorse and one of the most valuable sergeants within that unit. On the FBI task force point, the allegations are against the City of St. Louis. And I'm wondering, there's no allegations of presumably the FBI made the decision not to keep her as a task force member. That is absolutely right, Judge. There is no allegation that the FBI had any discriminatory motive towards Sgt. Muldrow. But the evidence on the record shows that Captain Deba, in his position as the commander of the intelligence unit, took steps to orchestrate and dupe Agent Lynch into believing that task force credentials were not permitted to be exercised, work performed for the FBI, if an employee was transferred out of the intelligence unit and was assigned to a district. So my question is, can that be an adverse employment action with respect to the City of St. Louis? So it would be if she was pursuing the FBI. I can't figure out how it applies to St. Louis. So what we've argued in our brief, Your Honor, is that cat's paw liability, which is generally seen as a non-decision maker, puts influence on a decision maker. The decision maker is not, in fact, discriminatory, or there's no evidence of that. But they're duped into doing the action that the discriminatory intent, they follow through with that unknowingly, unwittingly. And so our argument is that a similar thing happened in this instance, though it's not the employer who's making the decision. It's an agency that works with the them. And that's the argument, that it's a cat's paw liability. Have we ever extended it that far? And usually when you see that, you see an employee down the chain who's duped into it at the same agency. You don't see an entirely different sovereign, an entirely different agency. Yeah, I would not disagree with that, Judge. I could not find any law in the Eighth Circuit that took it that far, or any other circuit for that matter. But I believe that the intent of that theory shows that it should be applied in this case, again, because but for Captain Deva's actions, she would have maintained her TFO credentials and would have been able to, again, work up to $17,500 annually in overtime. Is that the main adverse employment action, is losing the TFO credentials? Because that's what I'm searching for. I think the TFO credentials could be an adverse employment action, but I don't necessarily see anything else. The other adverse employment action that Sergeant Muldrow alleges is with respect to the transfer itself. So the transfer from the intelligence unit into a district assignment where she was performing work as a road sergeant. So within our brief, we cited multiple Eighth Circuit cases that have found transfer similar to the one that Sergeant Muldrow experienced can be found to be adverse employment actions under Title VII. So just to name a few, Bonenberger, Tadlock, Davis, Fisher, Schock and See, and another one is Goodwin. So what we've put forth in our brief are facts that support that there was a material disadvantage suffered by Sergeant Muldrow as a result of the saving on gas mileage on her personal vehicle as well as gas money. So that was a monetary benefit that she lost as a result of the transfer. She was no longer permitted to work straight days, meaning a set nine-to-five schedule with weekends off. She was no longer able to travel as part of her investigative function. When you're a road sergeant in the city of St. Louis, you are confined to that particular district over which you're supervising. So she lost the ability for that. And then also, again, she lost the overtime pay. That was conceded by the city of St. Louis. In my opinion, there's no dispute that that was a material action that she suffered as a result of the transfer. But the overtime pay was connected to the task force work, right? It was. Okay. Yes. One of the other items that we cite in our brief for showing material employment disadvantage from this transfer that I just mentioned from intelligence to the district two assignment was a pretty significant change in the job duties that she experienced within the district itself. So for example, she went from doing highly confidential investigations into public figures around the county and city into doing basic entry-level police work. And of course, that's not to disparage the work that our good police officers are doing in those districts. But it's a significant change from the prestigious position she held in the intelligence unit prior to her transfer. How do we deal with situations in which, because we have the same rank, we have the same supervisory capacity, but what would you do when an employee says, for example, I really like desk jobs, but they put me out on the street. So it's sort of the opposite of what happened here. Now I'm doing investigations and now I'm not doing the desk job. Do we basically have to hold whatever the preferences of the particular employee are at adverse employment action when they get transferred somewhere they don't want to go? That's a great question, your honor. And no, you don't. In this case, Sergeant Muldrow testified that the assignment that she left in the intelligence unit was a prestigious assignment. Now that is not in our estimation any speculation on the prestige that the intelligence unit had given that she'd spent over 10 years in that particular unit. Certainly, if an employee is transferred somewhere and has minute changes to her job duties or doesn't like her new supervisor or something like that, that certainly doesn't rise to the level of adverse employment action. But in this case, there is significant evidence on the record of material changes to her employment. The other thing I wanted to mention, I'm sure the court has taken notice of the amicus brief filed in this case by the United States. Even if we assume for the sake of argument that this transfer that Sergeant Muldrow suffered was a lateral transfer in the way that term is described, no change in her duties, no change in the benefits of her employment, the United States has filed this brief setting forth its position that the EEOC interprets Title VII. Well, Mike, just to actually more or less cut you off. Sure. That position is contrary to controlling Eighth Circuit cases and therefore our panel could not adopt it. Okay. In my view, at least. I understand. I think that it's actually not in direct conflict with the Eighth Circuit cases. I think it is. Okay, fair enough. I'll move on, Judge. No, my colleagues may disagree, but to me, that categorical position is foreclosed. Fair enough, Judge. I'll move on. The other thing I wanted to mention. Ms. Hoffman, question for you. Even if we get past whether there was adverse action, you still have to show that she was treated differently. I thought there was evidence in the case that others were transferred, including male officers were transferred in a similar position as she was. With respect to the same administrative change and the transfers that followed that. It looks like maybe she wasn't treated differently. If you get past that, there looks to be some, at least on their face, some colorable, legitimate reasons for the transfer. A change in policy, a change in emphasis, new management, wanting to take the department, or at least this part of it, in a new direction. How do you respond to those questions? Certainly, Judge. With respect to your with that statement, I think the record is clear that the male who was transferred out of intelligence into a district assignment at the same time as Sergeant Muldrow was treated significantly different than her. He was permitted to keep his TFO credentials. Captain Deva did not make similar attempts to contact this male officer's supervisor. But that wasn't the defendant's FBI's decision. Respectfully, Judge, yes, the ultimate decision was. But what happened between the time of the transfers and the time of the revocation of the credentials is what's important, I think, for the point I'm trying to make. Do you want two weeks of some kind of what remedy? No, Judge, but my point is. At some point, these claims, it's hard to see any common to them. And on the cat's paw, the district court pointed out that only the plaintiff's inadmissible hearsay disputes what Deva told the FBI. Is that wrong? That is wrong, Judge. There was an email that is in the record between Captain Deva and Agent Lynch, which sets forth, in summary, some of the things that were discussed in that conversation that he had with Agent Lynch. But primarily what's important here. Does it say what is now the basis of the cat's paw claim? I believe that it does. And that he tells Agent Lynch that once someone is transferred out of intelligence, they cannot perform any work for the FBI. They have to turn in their TFO credentials. They have to turn in the FBI vehicle. There are no exceptions to this, according to Captain Deva in his email. So if you set aside the district court's discussion of the hearsay problems with the conversation, I think there is certainly documentary evidence to support the cat paw's liability theory with respect to what Captain Deva told Agent Lynch. And then to go back to your question, Judge Shepard, you were asking about how she was treated differently. And what I was attempting to communicate was the differences between the male that was transferred out and Sergeant Muldrow. And the differences are pretty compelling, I think, given the way the police department works, the way the command structure works. When a supervisor makes direct contact with Sergeant Muldrow's then new supervisor and makes remarks about her not following orders, things of that nature, that is very problematic for a police officer to be considered one not to follow orders. It's unacceptable, obviously, in their command structure. I don't understand that point. The supervisor can't tell an underling that you're not doing your job right? Oh, no, sir. In this police culture? No, sir, not at all. The context that I was attempting to communicate was, in this situation, Captain Deva directly reached out to Sergeant Muldrow's new supervisor and made remarks that we believe were not true with respect to her turning in her FBI vehicle, turning in her credentials. And that's where the difference in treatment shakes out. Those things were not done with respect to the male officer who similarly had task force officer credentials and was working for the ATF. Captain Deva didn't do any of those things to that male officer, but instead only to Sergeant Muldrow. I see that I'm almost out of time, so if there are any other questions, if not, I'll reserve the rest of my time for rebuttal. The district court also points out that no one was selected for transfer to the Department of Internal Affairs, and only withdrawn in February when she came back to the position that she was transferred out of, right? That is true. So how do we infer retaliation out of all that? The record has a significant amount of information about the difference in treatment that Sergeant Muldrow was experienced. Well, I saw all that back and forth, but it doesn't begin, in my view, to overcome these facts in terms of a submissible case of retaliation. And just to that point, Judge, one of the things that the district court did not properly address was the standard that CP used in these anti-retaliation cases. There is a different provision in Title VII that deals with anti-retaliation, and it specifically... Is that briefed, that issue? It is, Judge, yes. Okay. Yes. Oh, thank you. And Sergeant Muldrow is asking that this honorable court overturn the district court's motion, granting motion for summary judgment. Thank you. Thank you. Ms. Hamilton? Good morning, Your Honors, and may it please the court. My name is Sheena Hamilton. I'm the City Counselor for the City of St. Louis. If you would speak up a little, you might tip the mic a little bit. I might be a little short for this. So how's this? Is that better? That's great. Very good. So my name is Sheena Hamilton. I'm the City Counselor for the City of St. Louis and representing the City of St. Louis and Captain Deepa. I'd like to address one of Judge Shepard's points about how the male officer that has been identified as the most significant comparator by the appellant was allegedly treated differently. And when we're talking about the task force officer status, the record is actually very clear that that gentleman did not have task force officer status at the time of his transfer. It was later conferred upon him and later removed from him when it was determined that he would not be doing any of the tasks that were related to the ATF. So just for clarification, the statement is made repeatedly throughout the briefing that his status was not revoked or that Captain Deepa did not make mention of his status to his supervisor or to the agency in question. Just to make sure I understand, so he was granted task force status because of the position he was transferred into? No, he had actually started the process of getting task force officer status before the transfer, and at the time of the transfer, that was not complete, right? So the assertion several times in the briefing is that at the time of the transfer, Captain Deepa brought to the appellant's new supervisor the fact that she had this status or to her old supervisor with the FBI that she had this status and should not have it. But at that same moment in time, the male officer that was discussed previously did not actually have that status yet. It was later that he was conferred that status, and when it was determined that he would not be doing assignments in the task force officer status, that status was revoked. And I also will make mention of the fact that the words significant evidence were used many times in the appellant's presentation to the court, and the only reference to actual evidence was the plaintiff's own testimony. And you will notice that throughout, except for this email that we discussed. And I'll go back to that email because one of your honors, and I can't specifically recall which one, asked is there any other evidence that there was influence by Captain Deepa to the FBI on how the transfer impacted the appellant's ability to work on behalf of the FBI. And that email, your honors, I would argue states the opposite. Because in that email, the special agent with the FBI is given the contact information for the appellant's new supervisor, which wouldn't seem to suggest that this could never happen and she could never do that work. And now I'll kind of go into what I was planning to say, but this entire case kind of for perspective, the appellant's presentation talked about there being over two decades of employment with the city of St. Louis by the appellant. We're talking about in this case a time period of 18 months during which there was a change in leadership that Judge Shepard mentioned, there was a change in policy, and the underlying court analyzed the arguments in the record before it and then provided a detailed 40 failed as a matter of law. None of the employment actions at issue resulted in or would have resulted in a change in salary or benefits of employment or materiality. And the law of this circuit, as your honors have alluded to, strongly suggests that the materiality requirement is a meaningful one and should continue to be. And the plaintiff has admitted, or I'm sorry, the appellant has admitted that she did not experience, and I'm quoting, any long-term harm to her career prospects. And that is at page 79 and 80 of the record. And ultimately, in the litany of cases that are excited throughout the briefing, that is one of the really determinative factors is what happened with the rest of the individual's career who's bringing the claims. And again, to Judge Shepard's point, the city has showed legitimate non-discriminatory reasons for each of its decisions, and those decisions aren't refuted. They're almost ignored in the briefing that these reasons were given by leadership or argued one way for the city as a negative and another way for the appellant as though it should be accepted. And one example of that, your honors, is that when there was a leadership change and Captain Deepa took over the intelligence unit, what he did was request some people that he was familiar with to come into the unit. And it's normal that that happens, that there are transfers when there's a change in leadership. That's evidenced by documents in the record, multiple witnesses' testimony. And then, later in the record, there's a suggestion that the appellant should have been transferred to an aid position for a commander because she had familiarity with that particular commander. And that's her reason for saying that was an adverse action because she wasn't given this treatment. But in the other instance, earlier when the transfer occurred, that was considered an adverse action. So just pointing out the distinction there, there are three or four things that are recognized as normal multiple times throughout the record. First of all, the transfers. There are numerous examples of that. In fact, there were two male officers moved out of intelligence at the same time as the appellant. Fifteen other officers were transferred and four were detached at the same time. The majority of the officers that were transferred were male. There were also two female officers that remained in the intelligence unit at that same time and under Captain Deepa's new leadership. And the idea that the plaintiff or the appellant was singled out for transfer or that the transfer was based on her gender, more importantly, is not supported by the record. It is only- Can I just come back with a quick question because I'm not as familiar with the record as I need to be? This was summary judgment on the email. Was either participant or any participant in the email, either the sender, the receiver, or a CC person, deposed? What it meant? I believe Captain Deepa was asked questions about that email in his deposition and I'm not able to recall specifically, but I believe that that will be evidence to the record. All right, so how about Lynch? Um, I don't believe so. I don't think she, it's a she, I think. I don't think she was deposed. I think that's correct, Your Honor. And was the new supervisor deposed on the, on the, how, how to interpret the emails? I don't believe that the new supervisor whose contact information was provided was part of that email sequence. So that may not have been foundational in that line of questioning, so I don't believe that was asked. And I should mention, Your Honor, that I'm, I am pensioning for a colleague who is out on medical leave, and so I apologize for not being able to answer that directly, but I'm happy to. You're doing a good job on the record. Yeah, very good. Okay, and then, Your Honors, I'd like to talk a little bit about the evidence areas that, the evidence area issues that overlay the appellant's submission to the court. The appellant is asserting that her testimony alone could have persuaded a reasonable jury and that the underlying court ignored certain of her testimony. And I, I'd like to dispute that vigorously because Judge Fleissing's ruling plainly relates to the sufficiency of the evidence and not credibility determinations. Over and over again, the court noted that it accepted the appellant's assertions as under the standard, and then found those allegations did not amount to adverse actions, even when viewed cumulatively. There are different sections of this 40-page opinion that go through that and say, I am going to accept this as true as is required under the law, and even still, it's not enough to get to a submissible case. And further, Judge Fleissing made alternative rulings, which assumed that the appellant had made out a prima facie case in both instances, even though she did not. And so, this court may determine that it doesn't even need to reach those questions because the city and Captain Deeper provided those legitimate non-discriminatory reasons for the employment decisions that are not refuted in the record. The comparator cases that the appellant is referring to throughout, where officers lost supervisory responsibility over 80 subordinates, is one of the examples, or high-profile prestigious positions. It's a comparison of the law. It's not a comparison of the evidence. What is ignored in the briefing is the fact that those cases, in those records, have some evidentiary support for the idea that supervisory responsibility was lost, or the idea that a prestigious position existed. And so, saying that something's not disputed, that the intelligence unit was a high-profile position, that is something that the lower court was asking the appellant to come forward with evidence to establish, other than her own testimony, and she failed to do so. So, the adverse action, generally, I talked a little bit about it in what the law of this thing, that makes an employee unhappy, is an actionable adverse action. Contrary to the amicus briefing that was submitted to the court, under Title VII, it is necessary for a plaintiff to show that he or she suffered an actionable harm. That is really fundamental constitutional law of standing, and Title VII is very clear, in its case law, throughout its development, that trivial harms are not enough, and that it is not intended to produce the plaintiff or the employee's desired outcome, or question the employer's business judgment. Instead, it is there to prevent discrimination on the basis of protected categories, and that is what is lacking here, evidence of that. Quick question, while we're on basic law. Does the defendant agree that adverse employment action is a question of fact, ultimately, for the jury? Our case law, that should be crystal clear, and I think it is, but our cases are a little fuzzy on it sometimes. Well, it's decided on summary judgment routinely within the circuit and affirmed. Of course, but the fact that it's a question of fact doesn't mean you can't have summary judgment inquiry. If it's a question of law, then if it's a question of fact. Right. If you're not prepared to say, that's fine. I didn't think the briefs were crystal clear on it, but I don't know if it's a fighting issue or not. I don't think it's something that we're disputing, unless I'm missing something in the record. I will also, addressing the cat's paw theory that was discussed previously, the presentation of the appellant cited several Eighth Circuit's cases that support transfer as an adverse action, and this is another, or that was a statement that was made in the appellant's argument, that there are several cases from the Eighth Circuit that say transfer can support an adverse action. The city is not disputing that fact. Instead, it is distinguishing between those cases and the evidentiary support for the impact of that transfer, and that's what's lacking here. When we talk, for example, about overtime, we had a lot of discussion about overtime. One of the main arguments for that is harm. The suggestion was made that the city didn't dispute that the plaintiff lost overtime. The city did not concede that she lost the ability to obtain any overtime at all. Instead, the argument, and what's evidenced in the record, is that the plaintiff did, in fact, work overtime for the city, as opposed to the FBI, and failed to submit that time under her own choice, not under the direction of a supervisor or anything like that, and that the plaintiff had city, or the appellant had city-approved secondary employment, wherein she also had the ability to gain additional income. There's nothing to support the idea that she had no availability for overtime. But you do agree that if she had overtime with the task force, and suddenly she came back, and I know you're saying these aren't these facts, she came back and said, well, sorry, we only allow overtime for task force-type issues. That could constitute an adverse employment action, couldn't it? It might, your honor, and you're right, they're not the facts of this case, because she had multiple alternatives for achieving that same objective. I see that I am running out or short on time, but I just want to reiterate the point that she doesn't cite anything to support the idea that the cat's paw theory should translate from the city of St. Louis to the FBI, then back again. There are no cases in this circuit, or that the city is aware of, that support that sort of legal gymnastics, so thank you for your time, your honors. Thank you. I'll give you a minute for rebuttal if you want to speak to anything that we've heard. Thank you, your honor. A couple of things I wanted to address very quickly about Sheena's argument. She mentioned that Sergeant Muldrow had opportunity for overtime elsewhere after she was transferred, and that may be true, but the amount of overtime that was available to her was not as significant in terms of time as her task force officer credentials would have allowed her to obtain. Also, she mentioned that Sergeant Muldrow did not submit overtime that she worked to the city when she was assigned to the District 2 as a road sergeant, and the reason for that is discussed in the record. It is part of the culture of the police department that sergeants will generally come in 30 minutes beforehand and stay 30 minutes after, give or take, in order to do administrative duties associated with the position. So it was not, there was nothing nefarious about her not submitting the time. It was simply something that was done as a matter of course in the police department. Thank you. Thank you very much. The case has been thoroughly briefed and very well argued. Arguments have been helpful and we'll take it under advisement.